```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____
```

CARLOS BERMUDEZ,

               Petitioner,

**DECISION AND ORDER**
**No. 08-CV-0693T**

   -vs-

JAMES CONWAY

               Respondent.

```
_____
```

**I.   Introduction**

*Pro se* petitioner Carlos Bermudez ("Petitioner") has filed a timely petition for a writ of habeas corpus under 28 U.S.C. § 2254 challenging the constitutionality of his custody pursuant to a judgment entered November 3, 2005, in New York State, County Court, Erie County (Hon. Shirley Troutman), convicting him, after a bench trial, of Assault in the First Degree (N.Y. Penal Law ("Penal Law") § 120.10 [1]).

For the reasons stated below, habeas relief is denied and the petition is dismissed.

**II.  Factual Background and Procedural History**

The charges arose from an incident that occurred on May 10, 2004 in the City of Buffalo, New York wherein Felix Medina ("Medina" or "the victim") was shot with a .44 caliber revolver, sustaining serious injuries.

On May 10, 2004, at approximately 6:45 p.m., Medina and Michael Kemp ("Kemp") were going to get their hair put into braids at a friend's house. Trial Trans. [T.T.] 24. They exited a bus on the west side of Buffalo and approached the corner of Lafayette and Gelston Streets. T.T. 24-26. As they did so, Medina saw three Hispanic males in a teal colored Honda Civic hatchback, and approached the vehicle. T.T. 27, 62. When Medina was approximately ten yards away from the vehicle, the driver leaned back and Petitioner, who was known to Medina as "Charlie" and who was located in the front passenger side of the vehicle, reached past the driver and pointed a gun at Medina. Several shots were fired. T.T. 29-31, 66-67. One of the shots hit Medina's arm, and he began to run away. The vehicle followed Medina, and more shots were fired.[1] T.T. 32. Medina then jumped over a fence and into a backyard where he encountered a woman coming out of her back door. T.T. 33. Medina entered the woman's house and told her to call 911, which she did. Police and paramedics arrived shortly thereafter, and Petitioner told police at that time that "Charlie" shot him. T.T. 31.

On February 15, 2005, Petitioner was charged in a three-count indictment with Attempted Murder in the Second Degree (Penal Law

---

[1] At trial, the parties stipulated to the following: that the injuries sustained by the victim constituted serious physical injury; and that the bullets removed from the victim's wounds were .44 caliber in nature, and that a .44 caliber bullet was also recovered from the crime scene. T.T. 11-13.

§§ 110.00, 125.25 [1]), Assault in the First Degree (Penal Law § 120.10 [1]), and Criminal Use of a Firearm in the First Degree (Penal Law § 265.09 [1][a]).  See Resp't Ex. A (Ind. No. 01700-2004).

A bench trial was conducted in the Erie County Court before the Hon. Shirley Troutman, and Petitioner was found guilty of Assault in the First Degree and Criminal Use of a Firearm in the First Degree.  He was found not guilty of Attempted Murder in the Second Degree.  Verdict Mins. of 07/22/05 2-3.  Subsequently, the county court vacated the conviction for Criminal Use of a Firearm in the First Degree in light of Petitioner's acquittal for Attempted Murder in the Second Degree.  Motion Mins. of 07/27/05 4-5.

On November 3, 2005, Petitioner was sentenced to a determinate term of fifteen years imprisonment and five years post-release supervision.  Sentencing Mins. of 11/03/05 14.

The Appellate Division, Fourth Department unanimously affirmed Petitioner's judgment of conviction on March 16, 2007.  People v. Bermudez, 38 A.D.3d 1325 (4th Dep't 2007) (Resp't Ex. B); lv. denied, 9 N.Y.3d 840 (2007) (Resp't Ex. C).

This habeas corpus petition[2] followed, wherein Petitioner seeks relief on the following grounds: (1) that he was denied due

---

[2] On or about September 29, 2009, Petitioner moved to amend/correct the original habeas corpus petition to include additional claims.  Dkt. # 9.  On August 12, 2010, this Court (Hon. Leslie G. Foschio) denied Petitioner's motion to amend or correct the petition.  Dkt. # 10.

process when evidence of uncharged crimes was offered; (2) that the verdict was against the weight of the evidence; (3) that he was denied his right to a fair trial by the prosecutor's impeachment of his own witness; and (4) that his sentence was unduly harsh and excessive. See Pet. ¶ 22A-D (Dkt. # 1).

**III. General Principles Applicable to Habeas Review**

    **A.   The AEDPA Standard of Review**

Under the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), a federal court may grant habeas relief to a state prisoner only if a claim that was "adjudicated on the merits" in state court "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or if it "was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." § 2254(d)(2).  A state court decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 413 (2000).  The phrase, "clearly established Federal law, as determined by the Supreme Court of the United States," limits the law governing a habeas petitioner's claims to the holdings (not

*dicta*) of the Supreme Court existing at the time of the relevant state-court decision. Williams, 529 U.S. at 412; accord Sevencan v. Herbert, 342 F.3d 69, 73-74 (2d Cir. 2002), cert. denied, 540 U.S. 1197 (2004).

A state court decision is based on an "unreasonable application" of Supreme Court precedent if it correctly identified the governing legal rule, but applied it in an unreasonable manner to the facts of a particular case. Williams, 529 U.S. at 413; see also id. at 408-10. "[A] federal habeas court is not empowered to grant the writ just because, in its independent judgment, it would have decided the federal law question differently." Aparicio v. Artuz, 269 F.3d 78, 94 (2d Cir. 2001). Rather, "[t]he state court's application must reflect some additional increment of incorrectness such that it may be said to be unreasonable." Id. This increment "need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." Francis S. v. Stone, 221 F.3d 100, 111 (2d Cir. 2000) (internal quotation marks omitted).

Under AEDPA, "a determination of a factual issue made by a State court shall be presumed to be correct.  The [petitioner] shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1); see also Parsad v. Greiner, 337 F.3d 175, 181 (2d Cir. 2003) ("The presumption of correctness is particularly important when reviewing

the trial court's assessment of witness credibility."), cert. denied sub nom. Parsad v. Fischer, 540 U.S. 1091 (2003).  A state court's findings "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." Miller-El v. Cockrell, 537 U.S. 322, 340 (2003).

    **B.   Exhaustion Requirement**

"An application for a writ of habeas corpus on behalf of a person in custody pursuant to a judgment of a State court shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State. . . ." 28 U.S.C. § 2254(b)(1)(A); see, e.g., O'Sullivan v. Boerckel, 526 U.S. 838, 843-44 (1999); accord, e.g., Bossett v. Walker, 41 F.3d 825, 828 (2d Cir.1994), cert. denied, 514 U.S. 1054 (1995).  "The exhaustion requirement is not satisfied unless the federal claim has been 'fairly presented' to the state courts." Daye v. Attorney General, 696 F.2d 186, 191 (2d Cir. 1982) (*en banc*), cert. denied, 464 U.S. 1048 (1984).

    **C.   The Adequate and Independent State Ground Doctrine**

A procedural default generally bars a federal court from reviewing the merits of a habeas claim. Wainwright v. Sykes, 433 U.S. 72 (1977).  Federal habeas review is prohibited if a state court rests its judgment on a state law ground that is "independent of the federal question and adequate to support the judgment."

Cotto v. Herbert, 331 F.3d 217, 238 (2d Cir. 2003) (quoting Coleman v. Thompson, 501 U.S. 722, 729 (1991)); accord Jones v. Stinson, 229 F.3d 112, 117 (2d Cir. 2000). A state procedural bar qualifies as an "independent and adequate" state law ground where "'the last state court rendering a judgment in the case clearly and expressly states that its judgment rests on a state procedural bar.'" Levine v. Comm'r of Corr. Servs., 44 F.3d 121, 126 (2d Cir. 1995) (quoting Harris v. Reed, 489 U.S. 255, 262 (1989)). A state procedural rule will be adequate to preclude habeas review if it is "firmly established and regularly followed," unless the state rule is "exorbitant." Lee v. Kemna, 534 U.S. 362, 376 (2002) (quoting James v. Kentucky, 466 U.S. 341, 348 (1984)).

A federal court may review a claim, notwithstanding the petitioner's default, if he "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law." Coleman, 501 U.S. at 750; see also Levine, 44 F.3d at 126; Grey v. Hoke, 933 F.2d 117, 121 (2d Cir. 1991). A petitioner may establish cause by pointing to "some objective factor external to the defense [that] impeded counsel's efforts to comply with the State's procedural rule." Murray v. Carrier, 477 U.S. 478, 488 (1986); accord Coleman, 501 U.S. at 753. A petitioner suffers actual prejudice if the outcome of the case would likely have been different had the alleged constitutional violation not occurred. See Reed v. Ross, 468 U.S. 1, 12 (1984).

Alternatively, even if the petitioner is unable to show cause and prejudice, the court may consider the claim if he can demonstrate that failure to do so will result in a "fundamental miscarriage of justice." Coleman, 501 U.S. at 750.

**IV.  Petitioner's Claims**

**1.    Evidence of Uncharged Crimes**

Petitioner asserts, as he did on direct appeal, that he was denied his right to a fair trial when evidence of uncharged crimes was used against him. Specifically, he asserts that the prosecutor elicited testimony from Kemp "to the effect that Four Puerto Ricans, Petitioner being one of them, jumped out of a car with baseball bats [on a separate occasion] and proceeded to attack Mr. Kemp."[3]  Pet. ¶ 22A.  The Fourth Department rejected this claim

---

[3]  Petitioner's characterization of Kemp's testimony is not entirely consistent with Kemp's actual testimony. The record reflects that, on direct examination, the following exchange occurred between the prosecutor and Kemp:

Prosecutor: You testified a moment ago being jumped after this incident?

Kemp:  Four Puerto Ricans jumped out with bats on me in the same car that Wally driving.

Prosecutor: All right.  And was there someone named Charlie in that group?

Kemp:  I don't know who it was but I know was Wally and Feli.

Prosecutor: Do you recall meeting with me prior to today in my office?

Kemp:  What?

Prosecutor: Do you recall meeting with me prior to today to go over your testimony in my office?

Kemp:  Yeah.

Prosecutor: Do you recall telling me that someone named Charlie was someone known to you prior to May 10th?

on the merits.[4]  See Bermudez, 38 A.D.3d at 1325.  As discussed below, this claim provides no basis for habeas relief.

It is well established that a writ of habeas corpus based upon a state evidentiary error may be issued only if the petitioner demonstrates that the alleged error violated an identifiable constitutional right and that the error was "so extremely unfair that its admission violates fundamental conceptions of justice." Dunnigan v. Keane, 137 F.3d 117, 125 (2d Cir. 1998) (quoting Dowling v. United States, 493 U.S. 342, 352 (1990)).  Petitioner

---

Kemp:         Say that again.  I don't understand what you say.

Prosecutor:   Do you recall telling me that you knew Charlie prior to May 10th when we met to discuss your testimony?

Kemp:         I said I heard of Charlie.  I know Feli and Wally, I never said I saw Charlie, I had anything to do with him.

Prosecutor:   Do you recall, Mr. Kemp, talking about this incident where you were jumped?

Kemp:         Yeah.

Prosecutor:   Do you recall telling me that Charlie is one of the people that jumped you?

Kemp:         I didn't say he jumped me.  I said he jumped out.  I don't know if Charlie was there but his brother was there.

Prosecutor:   So that would not be correct, what we discussed yesterday, you telling me that Charlie was one of the people that jumped you after this incident?

Kemp:         I said jumped out.  I never saw Charlie, so I'm not gonna tell you that Charlie jumped out at me.  I never saw Charlie before this incident happened.  Fel know Charlie, I don't know Charlie.

T.T. 74-78.

[4]   The Fourth Department ruled as follows:  "We agree with defendant that County Court erred in admitting evidence of an uncharged crime without conducting a Ventimiglia hearing.  We conclude, however, that the error is harmless."  Bermudez, 38 A.D.3d at 1325 (internal citations omitted).

must show that the state court's error in admitting evidence of uncharged crimes or bad acts "was so persuasive as to have denied him of a fundamentally fair trial" depriving him of due process under the Fourteenth Amendment. Collins v. Scully, 755 F.2d 16, 18 (2d Cir. 1982); see also Roldan v. Artuz, 78 F. Supp. 2d 260, 276-77 (S.D.N.Y. 2000); Copes v. Schriver, No. 97- 2284, 1997 U.S. Dist. LEXIS 16349, at *8 (S.D.N.Y. Oct. 22, 1997). "In making this due process determination, the Court should engage in a two-part analysis, examining (1) whether the trial court's evidentiary ruling was erroneous under New York State law, and (2) whether the error amounted to the denial of the constitutional right to a fundamentally fair trial." Grayson v. Artus, No. 08-0493, 2010 U.S. Dist. LEXIS 7870, at *32-33 (E.D.N.Y. Feb. 1, 2010).

Here, even if the evidence regarding Petitioner's prior bad acts was erroneously admitted, Petitioner cannot show that the admitted evidence, viewed objectively in light of the entire record, was sufficiently material to deprive him of his constitutional right to a fair trial. First, "judges routinely hear inadmissible evidence that they are presumed to ignore when making decisions." Harris v. Rivera, 454 U.S. 339, 346 (1981). Since this was a bench trial, there was a diminished risk that admission of the evidence in question would have an unduly prejudicial effect on the outcome of the case. Second, in light of the ample evidence of Petitioner's guilt and the fact that the

victim had already identified Petitioner as the perpetrator of the crime, it can hardly be said that Petitioner was prejudiced by Kemp's testimony, thereby depriving him of his right to a fair trial. Thus, this claim provides no basis for habeas relief.

Moreover, to the extent, if any, Petitioner challenges the trial court's failure to hold a Ventimiglia[5] hearing, such a claim also provides no basis for habeas relief. The right to a Ventimiglia hearing -- a hearing to determine the admissibility of uncharged crimes evidence -- is purely a matter of state law. See, e.g., Pena v. Fischer, No. 00 Civ. 5984, 2003 U.S. Dist. LEXIS 7240, at *32-33 (S.D.N.Y. Apr. 30, 2003) (citing Jones v. Artuz, No. 97-CV-2063, 2002 U.S. Dist. LEXIS 16603 (E.D.N.Y. Aug. 30, 2002)). Habeas relief does not lie for errors of state law. See Estelle v. McGuire, 502 U.S. 62, 67 (1991).

Accordingly, Petitioner's claim is dismissed.

## 2. Verdict was Against the Weight of the Evidence

Petitioner contends, as he did on direct appeal, that the verdict was against the weight of the evidence. In particular, he argues that "[b]ased on all the credible evidence, the inference that a person other than [sic] petitioner shot the victim would not have been unreasonable." Pet. ¶ 22B. The Fourth Department rejected this claim on the merits, finding that "[t]he court's resolution of credibility issues is entitled to great deference,

---

[5] People v. Ventimiglia, 52 N.Y.2d 350 (1981)

and it cannot be said that the court failed to give the evidence the weight it should be accorded." Bermudez, 38 A.D.3d at 1326 (internal citations omitted). As discussed below, this claim is not cognizable by this Court on habeas review.

Challenges to the weight of the evidence supporting a conviction, unlike challenges to the sufficiency of the evidence, are not cognizable on federal habeas review. See e.g., Maldonado v. Scully, 86 F.3d 32, 35 (2d Cir. 1996). A claim that a verdict was against the weight of the evidence derives from N.Y. Crim. Proc. L. ("CPL") § 470.15(5) which permits an appellate court in New York to reverse or modify a conviction where it determines "that a verdict of conviction resulting in a judgment was, in whole or in part, against the weight of the evidence." CPL § 470.15(5). Thus, the "weight of the evidence" argument is a pure state law claim grounded in the criminal procedure statute, whereas a legal sufficiency claim is based on federal due process principles. People v. Bleakley, 69 N.Y.2d 490, 495 (1987). Since a weight of the evidence claim is purely a matter of state law, it is not cognizable on habeas review. See 28 U.S.C. § 2254(a); Estelle, 502 U.S. 62, 68 (1991) ("In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States.").

Accordingly, this claim provides no basis for habeas relief and is dismissed.

### 3.  Prosecutor's Impeachment of his own Witness

Petitioner argues, as he did on direct appeal, that he was deprived of a fair trial by the prosecutor's impeachment of his own witness. See Pet. ¶ 22C. The Fourth Department rejected this claim on a state procedural ground for failing to properly preserve the issue for appellate review. See Bermudez, 38 A.D.3d at 1325-26. Consequently, as discussed below, this claim is procedurally barred from review by this Court.

A federal court may not review a question of federal law decided by a state court if the state court's decision rested on a state law ground, whether substantive or procedural, that is independent of the federal question and adequate to support the judgment. See Coleman, 501 U.S. at 729. Here, the state court relied on New York's preservation rule (codified at CPL § 470.05(2)) to deny Petitioner's claim because the issue had not been properly preserved for appellate review. The Second Circuit has determined that CPL § 470.05(2) is an independent and adequate state procedural ground. See Garcia v. Lewis, 188 F.3d 71, 79-82 (2d Cir. 1999); Velasquez v. Leonardo, 898 F.2d 7, 9 (2d Cir. 1990). The Fourth Department's reliance on New York's preservation rule is an adequate and independent state ground which precludes this Court's review of his claim.

This Court may reach the merits of Petitioner's claim, despite the procedural default, if he can demonstrate cause for the default

and prejudice, or that failure to consider the claim will result in a miscarriage of justice. See Coleman, 501 U.S. at 750. Petitioner alleges ineffective assistance of counsel as cause for the default. See Pet. ¶ 22C. A claim of ineffective assistance of counsel may establish cause for a procedural default. See Edwards v. Carpenter, 529 U.S. 446, 451 (2000); McCleskey v. Zant, 499 U.S. 467, 494 (1991); United States v. Frady, 456 U.S. 152, 168 (1982). However, even assuming arguendo that ineffective assistance of counsel was cause for the default, a finding which this Court does not make, Petitioner has made no showing of (or even alleged) prejudice. See Murray, 477 U.S. at 496 (adhering to the cause and prejudice test "in the conjunctive") (quotation omitted). Moreover, Petitioner has not demonstrated that this Court's failure to review the claim will result in a miscarriage of justice. Accordingly, Petitioner is unable to overcome the procedural default, and the claim is therefore dismissed as procedurally defaulted.

**4. Sentence was Unduly Harsh and Excessive**

Petitioner argues, as he did on direct appeal, that his sentence was unduly harsh and excessive insomuch as "[he] was a young man at the time of th[e] offense and the possibility of his rehabilitation would be advanced by a shorter prison sentence." Pet. ¶ 22D. The Fourth Department rejected this claim on the merits. See Bermudez, 38 A.D.3d at 1326. As discussed below, this

claim does not present an issue that is cognizable by this Court on federal habeas review.

It is well-settled that a habeas petitioner's challenge to the length of his or her prison term does not present a cognizable constitutional issue if the sentence falls within the statutory range. Townsend v. Burke, 334 U.S. 736, 741 (1948) ("The [petitioner's] sentence being within the limits set by the statute, its severity would not be grounds for relief here even on direct review of the conviction, much less on review of the state court's denial of habeas corpus."); White v. Keane, 969 F.2d 1381, 1383 (2d Cir. 1992) ("No federal constitutional issue is presented where . . . the sentence is within the range prescribed by state law.") (citing Underwood v. Kelly, 692 F.Supp 146 (E.D.N.Y. 1988), aff' mem., 875 F.2d 857 (2d Cir. 1989)); accord Ross v. Gavin, 101 F.3d 687 (2d Cir. 1996) (unpublished opinion). Because Petitioner's sentence falls within the permissible statutory range, he may not challenge the length of the sentence in the instant proceeding.

Here, Petitioner was sentenced to a determinate term of fifteen years imprisonment. S.M. 14. This term falls within the range prescribed by New York law. See Penal Law § 70.02 [3][a], 120.10 [1]. Accordingly, Petitioner's claim presents no basis for habeas relief and is therefore dismissed.

**V.     Conclusion**

For the reasons stated above, the petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied, and the petition is dismissed. Because Petitioner has failed to make "a substantial showing of a denial of a constitutional right," 28 U.S.C. § 2253(c)(2), I decline to issue a certificate of appealability. See, e.g., Lucidore v. New York State Div. of Parole, 209 F.3d 107, 111-113 (2d Cir. 2000). The Court also hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this judgment would not be taken in good faith and therefore denies leave to appeal as a poor person. Coppedge v. United States, 369 U.S. 438 (1962).

Petitioner must file any notice of appeal with the Clerk's Office, United States District Court, Western District of New York, within thirty (30) days of the date of judgment in this action. Requests to proceed on appeal as a poor person must be filed with United States Court of Appeals for the Second Circuit in accordance with the requirements of Rule 24 of the Federal Rules of Appellate Procedure.

**IT IS SO ORDERED.**

S/Michael A. Telesca

_____
HONORABLE MICHAEL A. TELESCA
United States District Judge

DATED:     March 21, 2011
           Rochester, New York